**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **RAMELLI WASTE, LLC** | § | |
| **AND JACKSON/RAMELLI, LLC** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Case No.** <u>4:15-cv-00129</u> |
| | § | |
| **HALLMARK SPECIALTY INSURANCE** | § | |
| **COMPANY, INC.** | § | |
| | § | |
| **Defendant.** | § | |

## COMPLAINT FOR VIOLATIONS OF THE TEXAS INSURANCE CODE, DECLARATORY JUDGMENT, AND OTHER RELIEF

COME NOW, Ramelli Waste, LLC ("Ramelli Waste") and Jackson/Ramelli, LLC ("Jackson/Ramelli"), and file this, their Complaint against Hallmark Specialty Insurance Company, Inc. ("Hallmark"), stating as follows:

### I.

### PARTIES

1.     Ramelli Waste, LLC ("Ramelli Waste") is a Louisiana limited liability company with its principal place of business at 7136 Washington Avenue, New Orleans, Louisiana.

2.     Jackson/Ramelli, LLC ("Jackson/Ramelli") is a Mississippi limited liability company whose registered agent is located at 4795 McWillie Drive, Suite 120, Jackson, MS 39236.

3.     Defendant Hallmark Specialty Insurance Company, Inc. ("Hallmark") is an Oklahoma corporation and subsidiary of Ft. Worth-based Hallmark Financial Services, Inc. ("HFS"), with its principal office at 777 Main Street, Suite 1000, Fort Worth, Texas, and which

may be served with process under Service of Suit Clause at 7550 W. IH-10, Suite 1400, San Antonio, Texas 78229.

## II.

### JURISDICTION AND VENUE

4.      Plaintiffs are citizens of different states than Defendants, and, as more fully set forth below, the amount in controversy herein exceeds the sum of $75,000.00, exclusive of interest, attorneys' fees and costs. Therefore, this Court has subject matter jurisdiction under 28 U.S.C. § 1332.

5.      Further, Plaintiffs seek declaratory judgment pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201 and 2202, which grant United States District Courts jurisdiction to declare the "rights and other legal relations of any interested parties seeking such declaration, whether or not further relief is or could be sought."

6.      Venue is appropriate in this Court and division because Hallmark, a subsidiary of HFS, has its principal office in Fort Worth, Texas, and the insurance policy in question lists Hallmark's "Corporate Location" as 777 Main Street, Suite 1000, Fort Worth, Texas. (*See* Hallmark Policy, pg. 5, Exhibit "1" attached). Furthermore, the insurance policy in question contains a Service of Suit Clause, which states:

> It is agreed that in the event of the failure of the company [Hallmark] heron to pay any amount claimed to be due here under, the company heron [sic] at the request of the insured (or reinsured) **will submit to the jurisdiction of any court of competent jurisdiction within the United States** and will comply with all requirements necessary to give such Court jurisdiction and **all matters arising here under shall be determined in accordance with the law and practice of such Court**.

(*See* Hallmark Policy, Exhibit "1" attached) (emphasis added).

## III.

## FACTUAL BACKGROUND

7.      Ramelli Waste is a Louisiana-based waste company engaged in the removal and hauling of debris, trash and junk from municipal, residential and commercial sites. As part of its regular business operations, Ramelli Waste often contracts with other businesses for performance of various contracted work. A vital part of Ramelli Waste's business agreements with other contractors is to be named as an insured on those contractors' insurance policies on a primary or additional basis.

### A.  *Ramelli Waste's Subcontract with RKC Requiring Additional Insured Coverage*

8.      On or about June 30, 2008, Ramelli Waste entered a "SUBCONTRACTOR AGREEMENT" with another Louisiana waste services company, "Red K Contracting"[1] ("RKC"), under which RKC "agree[d] to furnish all material and perform all work necessary for removal and disposal of residential trash." (*See* Subcontractor Agreement, pg. 1, Exhibit "2" attached).

9.      The "SUBCONTRACTOR AGREEMENT" required RKC to "**name … Ramelli Waste, LLC as additional insured** with full Waiver of Subrogation on their policies." (*See* Subcontractor Agreement, pg. 2, Exhibit "2" attached) (emphasis added).

### B.  *2011 Application for Insurance Policy Naming Ramelli Waste as Additional Insured*

10.      On or about October 13, 2011, RKC submitted an ACORD "COMMERCIAL INSURANCE APPLICATION" (the "Application") to Specialty Risk Associates, Inc. ("Specialty Risk"), a binding agent for Hallmark. (*See* Application, Exhibit "3" attached).

11.      The Application, which was submitted to Specialty Risk through RKC and

---

[1] Red K Contracting, Inc., a former Louisiana corporation, which converted to an entity known as RKC, LLC in or about March 2008. This entity now performs its business operations under the name RKC, LLC ("RKC").

Ramelli Waste's Louisiana-based independent insurance agency, Riverlands Insurance Services, Inc. ("Riverlands"), specifically listed "Ramelli Waste, LLC" as an **ADDITIONAL INSURED**." (*See* Application, pg. 6, Exhibit "3" attached).

### C. *Hallmark's Issuance of Insurance Binders and An Insurance Policy Granting Additional Insured Coverage to Ramelli Waste*

12.     On or about October 13, 2011, Specialty Risk issued a renewal binder on behalf of Hallmark for renewal # LAA800753-02, covering a Policy Period of 10/14/2011 to 10/14/2012 (the "10/13/11 Binder"), and including blanket additional insured coverage:

> **EXPOSURES:**     30 units, symbols 7, 8, 9
> Garaged St. Rose &
> Jackson MS
> **Incl Blkt AI/WOS**

(*See* 10/13/11 Binder, pg. 1, Exhibit "4" attached) (emphasis added).

13.     On or about November 2, 2011, Specialty Risk issued a revised renewal binder on behalf of Hallmark for a Policy Period of 10/14/2011 to 10/14/2012 altering the commission amount (the "11/2/11 Binder"), and again including blanket additional insured coverage:

> **EXPOSURES:**     30 units, symbols 7, 8, 9
> Garaged St. Rose &
> Jackson MS
> **Incl Blkt AI/WOS**

(*See* 11/2/11 Binder, pg. 2, Exhibit "5" attached) (emphasis added).

14.     After Riverlands submitted the Application to Specialty Risk, Hallmark issued Policy No. LAA800753 with a countersignature date of November 1, 2011 (the "Hallmark Policy"). (*See* Hallmark Policy, pg. 6, Exhibit "1" attached). Hallmark is the carrier listed on the Hallmark Policy. (*See* Hallmark Policy, pg. 1, Exhibit "1" attached).

15.     In the "SCHEDULE OF FORMS AND ENDORSEMENTS," the Hallmark Policy lists endorsement Form Number "CA9901T (08/09)" as an "Additional Insured"

endorsement. (*See* Hallmark Policy, pg. 7, Exhibit "1" attached).

16.     Also attached to the Hallmark Policy is "ADDITIONAL INSURED" endorsement CA 99 01T, which states that it extends "LIABILITY COVERAGE" to "ALL LISTED AND TO BE ENDORSED." (*See* Policy, pg. 38, Exhibit "1" attached).

17.     The Hallmark Policy provides coverage to "You for any covered 'auto.'" (*See* Hallmark Policy, pg. 13, Exhibit "1" attached).

18.     In the Hallmark Policy's "Who Is An Insured" provision of the "LIABILITY COVERAGE" section, the Hallmark Policy states that "[a]nyone liable for the conduct of an 'insured'" qualifies as an "insured[.]" (*See* Hallmark Policy, pg. 14, Exhibit "1" attached).

### D. *The June 2012 Auto Accident in Hinds County, Mississippi*

19.     On or about June 13, 2012, an automobile accident occurred in Hinds County, Mississippi (the "Accident"). The Accident involved at least two separate collisions: first, a vehicle driven by Rayford and Mary Ann Buckles (collectively, "the Buckles") collided with a waste truck driven by Antoinette Smith ("Smith"); second, another collision occurred with a vehicle driven by another party, Christopher Walker ("Walker").

20.     At the time of the Accident, Smith was an employee of RKC.

21.     The "Sterling Actera" truck Smith is alleged to have been driving at the time of the Accident is a scheduled vehicle under the Hallmark Policy. (*See* Hallmark Policy, pg. 9, Exhibit "1" attached).

22.     Hallmark was made aware of the Accident at the time it occurred.

23.     On or about February 11, 2013, Hallmark received notice of a demand by Walker, alleging bodily injury damages. Hallmark subsequently settled Walker's claim on behalf of RKC and, on information and belief, Ramelli Waste.

### E. *Buckles' Lawsuit Against Ramelli Waste in Hinds County, Mississippi; Ramelli Waste's Claim for a Defense and Insurance Coverage from Hallmark*

24.     On or about January 28, 2014, Rayford and Mary Ann Buckles (collectively, "the Buckles") filed suit against Defendants Antoinette Smith and Ramelli Waste in the Circuit Court of Hinds County, Mississippi, seeking damages of at least $7,500,000 for their alleged injuries arising out the Accident. (*See* Complaint, Exhibit "6" attached).

25.     On or about May 12, 2014, Riverlands submitted a claim by e-mail to 'Specialty Risk Asssoc Claim Submissions (receptionist@specialty-risk.com).'

26.     Riverlands forwarded the May 12, 2014 e-mail and related claim attachments to an adjuster with Hallmark, Walter Rodriguez, on or about July 22, 2014. The July 22, 2014 communication also attached "a copy of the policy outlining blanket additional insured including copy of signed application that was sent to Specialty Risk at binding naming Ramelli Waste, LLC as Additional Insured[,]" and stated: "**Upon review, please advise next step in providing defense. Thank you in advance for your prompt attention.**"

27.     On or about July 30, 2014, counsel for Riverlands requested that the Hallmark adjuster direct any further communications to him.

28.     By August 1, 2014, on information and belief Hallmark had retained defense counsel in the Hinds County Litigation on behalf of Smith (the RKC employee). On that date, Riverlands' counsel asked the Hallmark adjuster whether he should be directing his communications to the Hallmark adjuster or to Hallmark's Hinds County Litigation defense counsel. The Hallmark adjuster did not provide any written response.

29.     By August 22, 2014, Hallmark had not expressly acknowledged receipt of Ramelli Waste's claim for a defense and insurance coverage or requested a comprehensive list of items it needed in order to make a determination as to whether it owed Ramelli Waste a

defense and/or coverage.

30.     By August 27, 2014 email, Riverlands' counsel asked Hallmark's defense counsel in the Hinds County Litigation, "have you seen the hallmark blanket additional insured endorsement now? **Please advise if you agree or disagree that ramelli would be included in that**."

31.     On or about September 5, 2014, Riverlands' counsel sent Hallmark's defense counsel in the Hinds County Litigation a detailed letter, outlining **fourteen (14) reasons** why Ramelli Waste is an additional insured under the Hallmark Policy and should be provided a defense and insurance coverage, stating:

> **Therefore, as the agent for Ramelli, Riverlands Insurance Services hereby makes demand upon Hallmark to defend and indemnify Ramelli against the claims made by Mr. and Mrs. Buckles arising out of the June 13, 2012 auto collision. <u>If, for whatever reason, Hallmark refuses to defend and indemnify Ramelli Waste in this matter, please provide your explanation in writing.</u>**

(*See* September 5, 2014 Demand Letter, Exhibit "7" attached) (emphasis attached).

32.     By September 12, 2014, Hallmark still had not provided a response to Ramelli Waste's demand for defense and insurance coverage under the Hallmark Policy.

33.      On September 12, 2014, Riverlands' counsel sent the following communication to Hallmark's defense counsel in the Hinds County Litigation, demanding an answer as to whether Hallmark would provide Ramelli Waste a defense and/or insurance coverage by 1:00 p.m. on that date:

> Please see the note below with explanation and the attachments.
> There is a follow-up email and attachment that goes with this.
> This information is all in the Hallmark broker file materials.
> RKC paid and Hallmark accepted premium for additional insured coverage, RKC specifically revised the binder, and resent the application adding Blanket Additional Insured and Waiver of Subrogation which listed Ramelli.
> Hallmark defended and settled at least three claims/lawsuits that we are aware of and paid over $400,000 that we are aware of on behalf Ramelli.

**In a final attempt to avoid breach of contract and bad faith claims that will be filed against Hallmark by Ramelli, please reconsider your refusal to at least provide a defense to Ramelli  before Ramelli has to incur defense costs.**
**Please respond by 1:00 PM today.**

34.     By September 18, 2014, Hallmark still had not provided any written response to Ramelli Waste's demand for a defense and/or insurance coverage. At that time, Ramelli Waste retained its own defense counsel in the Hinds County Litigation to be paid at its own expense.

F.     *Buckles' Second Amended Complaint; Ramelli Waste and Jackson/Ramelli's Demands for a Defense / Insurance Coverage*

35.     On November 14, 2014, the Buckles filed a Second Amended Complaint (the "Second Amended Complaint"), naming Jackson/Ramelli, RKC, and Waste Management of Mississippi, Inc. ("Waste Management"), as additional defendants in the Hinds County Litigation, and seeking total alleged damages of $11,000,000. (*See* Second Amended Complaint, pp. 5-6, Exhibit "8" attached).

36.     In the Second Amended Complaint, the Buckles define Ramelli Waste, Jackson/Ramelli, RKC, and Waste Management collectively as the "Corporate Defendants." (*See* Second Amended Complaint, pg. 4, Exhibit "8" attached).

37.     As a theory of liability, the Second Amended Complaint asserts that "[t]he Corporate Defendants are liable for the negligent acts and/or omissions of Defendant Smith by virtue of the common law doctrine of vicarious liability including but not limited to the **doctrines of agency, employee/employer, control, actual authority, apparent authority, loaned servant, joint venture, joint enterprise, non-delegable duty, and denial of adequate legal remedy, and/or by virtue of contract and/or by virtue of state and federal statutory and regulatory law**." (*See* Second Amended Complaint, pg. 4, Exhibit "8" attached) (emphasis added). Various contracts were attached to the Second Amended Complaint in support of that assertion. (*See* Second Amended Complaint, pp. 8-44, Exhibit "8" attached).

38.     As with Ramelli Waste, RKC had a "SUBCONTRACTOR AGREEMENT" with Jackson/Ramelli, under which RKC "agree[d] to furnish all material and perform all work necessary for removal and disposal of residential trash." (*See* Subcontractor Agreement, pg. 1, Exhibit "9" attached). This "SUBCONTRACTOR AGREEMENT" also required RKC to "**name … Jackson/Ramelli, LLC as additional insured** with full Waiver of Subrogation on their policies." (*See* Subcontractor Agreement, pg. 2, Exhibit "9" attached) (emphasis added).

39.     On or about January 6, 2015, Ramelli Waste's privately retained counsel in the Hinds County Litigation sent a demand for defense and indemnification to RKC's counsel, stating:

> It is my understanding that, prior to this firm's being retained to represent the Ramelli entities in this matter, demand was made on behalf of Ramelli Waste, LLC, for a defense and indemnity from Hallmark Specialty Underwriters, Inc. as an additional insured under RKC's automobile liability policy, and that such claim was denied. However, **I have never seen a copy of any written correspondence reflecting such denial. If such correspondence exists, I request that you forward it to my attention.** [... ]
> By this letter, Ramelli Waste, LLC, and Jackson/Ramelli, LLC, hereby demand a defense and indemnification from RKC, LLC, as it relates to the lawsuit filed by the Buckles in this matter. This demand is made pursuant to written contract as well as under Mississippi common law indemnity. **I also request that this demand be forwarded to Hallmark and that a written response be made** as to whether the insurer will provide a defense and/or indemnification to either of the Ramelli entities herein.

(*See* 01/06/15 Demand Letter, Exhibit "10" attached) (emphasis added).

40.     On or about January 9, 2015, counsel for Jackson/Ramelli in the Hinds County Litigation sent a demand for defense and indemnification to RKC's counsel, stating:

> As a follow-up to my correspondence to you dated January 6, 2015, attached to this letter please find a Subcontractor Agreement between Jackson/Ramelli, LLC and Red K Contracting dated June 1, 2007. […] This Subcontract additionally demonstrates the fact that RKC, LLC owes a defense and indemnification not only to Ramelli Waste, LLC but also to Jackson/Ramelli, LLC, as it relates to the claims asserted by the Buckles herein.
> **I would thus request that this letter and 6/1/07 Subcontract attached hereto**

**be forwarded to Hallmark, in addition to my 01/06/15 letter, and that a written response be made as to whether the insurer will provide a defense and/or indemnification to either of the Ramelli entities herein.**

(*See* 01/09/15 Demand Letter, Exhibit "11" attached) (emphasis added).

41. As of the date of the filing of this Complaint, neither Ramelli Waste nor Jackson/Ramelli have received any response to these letters or otherwise provided any explanation from Hallmark as to whether the carrier will provide it a defense and/or insurance coverage to Ramelli Waste and Jackson/Ramelli in relation to the Buckles' claim.

42. It has been *at least two hundred (200) days* since Hallmark was first placed on notice of Ramelli Waste's claim for a defense and insurance coverage related to the Buckles' claims, and Hallmark has not provided any written response whatsoever.

## IV.

## STATUTORY FRAMEWORK: <u>TEXAS INSURANCE CODE</u>

### *Regulation of Texas Insurers*

43. Under the Texas Insurance Code (the "Code"), the Texas Department of Insurance (the "Department") is required, among other things, to "protect and ensure the fair treatment of consumers[.]" TEX. INS. CODE, Title 5, Subtitle C, § 541.003.

44. HFS's 2014 10-K filed with the United States Securities and Exchange Commission states that its "insurance operations are regulated by the Texas Department of Insurance[.]"[2] Hallmark is a Texas-based subsidiary of HFS.

### <u>§ 542</u>

45. § 542 of the Code is titled the "Unfair Claim Settlement Practices Act" (referred to herein as "§ 542"). TEX. INS. CODE, Title 5, Subtitle C, § 542.001. § 542 prohibits Texas

---

[2] *See* http://www.sec.gov/Archives/edgar/data/819913/000114420414015058/v371114_10k.htm.

insurers from engaging in unfair claim settlement practices in their dealings with claimants. TEX. INS. CODE, Title 5, Subtitle C, § 542.001-003. § 542 requires the "PROMPT PAYMENT OF CLAIMS" and sets forth certain deadlines by which carriers must take certain action in their handling of insurance claims. TEX. INS. CODE, Title 5, Subtitle C, § 542.051.

### *Definitions*

46.     Under § 542, a "claim" is a "first-party claim that … is made by an insured or policy holder under an insurance policy or contract or by a beneficiary named in the policy or contract[.]" TEX. INS. CODE, Title 5, Subtitle C, § 542.051(2)(A).

47.     A "Claimant" means a person making a claim. TEX. INS. CODE, Title 5, Subtitle C, § 542.051(3).

48.     A "Notice of claim" means "any written notification provided by a claimant to an insurer that reasonably apprises the insurer of the facts relating to the claim." TEX. INS. CODE, Title 5, Subtitle C, § 542.051(4).

### *Statutory Deadline to Respond to a Claim*

49.     Upon receipt of a claim for a defense and/or coverage under an insurance policy, § 542 of the Code requires insurers to do the following:

"**Not later than the 15th day or**, if the insurer is an eligible surplus lines insurer, **the 30th business day** after the date an insurer receives notice of a claim, the insurer shall:

(1) Acknowledge receipt of the claim;

(2) Commence any investigation of the claim; and

(3) Request from the claimant all items, statements, and forms that the insurer reasonably believes, at that time, will be required from the claimant.

TEX. INS. CODE, Title 5, Subtitle C, § 542.055 (emphasis added).

### *Statutory Deadline to Accept or Reject a Claim*

50.     In addition to the deadline to acknowledge a claim and request all items needed by the insurer, § 542 of the Code requires insurers to provide "NOTICE OF ACCEPTANCE OR REJECTION OF CLAIM" as follows:

> "an insurer shall notify a claimant **in writing** of the acceptance or rejection of a claim **not later than the 15th business day** after the date the insurer receives all items, statements, and forms required by the insurer to secure final proof of loss.

TEX. INS. CODE, Title 5, Subtitle C, § 542.056 (emphasis added).

### *Penalties for Violations of § 542:*
### *Actual damages, 18% Interest, and Attorneys' Fees*

51.     If an insurer fails to comply with § 542's claim handling deadlines and requirements, the insurer "is liable to pay the holder of the policy or the beneficiary making the claim under the policy, in addition to the amount of the claim, interest on the amount of the claim at the rate of 18 percent a year as damages, together with reasonable attorney's fees." TEX. INS. CODE, Title 5, Subtitle C, § 542.060.

52.     The remedies provided in § 542 are *not* exclusive, but "are in addition to any other remedy or procedure provided by law or at common law." TEX. INS. CODE, Title 5, Subtitle C, § 542.061.

### *Liberal Construction*

53.     § 542 of the Code "shall be liberally construed to promote the prompt payment of insurance claims." TEX. INS. CODE, Title 5, Subtitle C, § 542.054.

### **§541**

### *Unfair Insurance Settlement Practices*

54.     § 541 of the Code states that it is "an unfair or deceptive act or practice in the business of insurance to engage in the following unfair settlement practices with respect to a

claim by an insured or beneficiary:

> (2)  failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of: (A)  a claim with respect to which the insurer's liability has become reasonably clear; […]

> (3)  failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim;

> **(4)  failing within a reasonable time to:**
> > **(A)  affirm or deny coverage of a claim to a policyholder;  or**
> > **(B)  submit a reservation of rights to a policyholder[.]**"

TEX. INS. CODE, Title 5, Subtitle C, § 541.003 (emphasis added).

### *Penalties for Violations of § 541:*
### *Treble Damages, Costs, and Attorneys' Fees*

55.    The base damage award for violations of fair settlement practices under the Code allows for recovery of "the amount of **actual damages, plus court costs and reasonable and necessary attorney's fees[.]**" TEX. INS. CODE, Title 5, Subtitle C, § 541.152(a)(1) (emphasis added).

56.    Moreover, "on a finding by the trier of fact that the defendant knowingly committed the act complained of, the trier of fact may award **an amount not to exceed three times the amount of actual damages**[.]" TEX. INS. CODE, Title 5, Subtitle C, § 541.152(b) (emphasis added).

### *Liberal Construction*

57.    Like § 542, § 541 states that it "shall be liberally construed and applied to promote the underlying purposes as provided by Section 541.001." TEX. INS. CODE, Title 5, Subtitle C, § 541.008.

**V.**

**RAMELLI WASTE'S CAUSES OF ACTION**
**ASSERTED AGAINST HALLMARK**

*CAUSE 1:*
*VIOLATIONS OF TEXAS INSURANCE CODE § 542*

58.     Ramelli Waste incorporates by reference herein each of the allegations contained in paragraphs 1 to 53 above.

59.     Ramelli Waste is a "Claimant" as that term is defined in § 542 of the Code.

60.     At least as early as July 22, 2014, Ramelli Waste provided a specific "Notice of claim" to Hallmark related to the Buckles' claims, seeking a defense and insurance coverage for the lawsuit filed against it by the Buckles.

61.     Under § 542, Hallmark had a duty to respond to Ramelli Waste's claim and to request a comprehensive list of items reasonably believed to be required from Ramelli Waste within fifteen (15) or thirty (30) days of receipt of the "notice of claim."

62.     By August 22, 2014, Hallmark had failed to meet its statutory obligations under § 542 and had not requested "all items, statements, and forms that the insurer reasonably believes, at that time, will be required from the claimant."

63.     At least as early as July 22, 2014, Ramelli Waste provided information to Hallmark including a claim notice, application outlining blanket additional insured endorsement, and copy of signed application naming Ramelli Waste as additional insured.

64.     Under § 542, Hallmark had a duty to provide **written acceptance or rejection** of Ramelli Waste's claim within fifteen (15) business days after receipt of "all items, statements, and forms required by the insurer to secure final proof of loss."

65.     Hallmark failed to provide a written response as to whether Hallmark would

provide a defense and insurance coverage within fifteen (15) days of its receipt of the items contained in the July 22, 2014 correspondence.

66.     Numerous times, Ramelli Waste demanded (in writing) that Hallmark provide a written response as to whether Hallmark would provide a defense and insurance coverage to Ramelli Waste with respect to the Buckles' claims. Hallmark unequivocally failed to do so.

67.     Ramelli Waste provided numerous documents to Hallmark over the course of the next several months including binders containing blanket additional insured coverage, the insurance Hallmark Policy, the application naming Ramelli Waste as additional insured, and evidence of prior lawsuits in which Hallmark provided a defense and/or insurance coverage to Ramelli Waste.

68.     On numerous occasions, Ramelli Waste provided detailed reasons (in writing) to Hallmark as to why it is should be provided a defense and insurance coverage under the Hallmark Policy. Hallmark continually failed to respond.

69.     After more than sixty (60) days of non-response from Hallmark, Ramelli Waste was forced to procure privately retained counsel in the Hinds County Litigation. After being retained, Ramelli Waste's counsel in the Hinds County Litigation *again* demanded that Hallmark provide a written response as to whether Hallmark would provide a defense and insurance coverage to Ramelli Waste with respect to the Buckles' claims.

70.     *At least two hundred (200) days* have passed since Hallmark was first placed on notice of Ramelli Waste's claim for a defense and insurance coverage in the Hinds County Litigation.

71.     The length of time which has passed constitutes a *de facto* denial of Ramelli Waste's claim.

72.     Pursuant to § 542, Hallmark's failure to comply with the statutory claim handling deadlines and requirements renders it liable for actual damages incurred by Ramelli Waste, 18% interest on those damages, and attorneys' fees.

73.     Ramelli Waste's damages continue to be incurred on a daily basis; if any judgment is rendered against Ramelli Waste in the Hinds County Litigation, Ramelli Waste will incur additional damages in the amount of such judgment plus costs and attorneys' fees.

*CAUSE 2:*
*DECLARATORY JUDGMENT*
*(DUTY TO DEFEND)*

74.     Ramelli Waste incorporates by reference herein each of the allegations contained in paragraphs 1 to 42 above.

75.     There is a real and actual controversy between Ramelli Waste and Hallmark as to Hallmark's duties under the Hallmark Policy related to the claims filed against Ramelli Waste in the Hinds County Litigation.

76.     Ramelli Waste's "SUBCONTRACTOR AGREEMENT" with RKC required RKC to "**name … Ramelli Waste, LLC as additional insured**" on its insurance policies.

77.     The "ADDITIONAL INSURED" endorsement attached the Hallmark Policy under form "CA 99 01T" states that it extends "LIABILITY COVERAGE" to "ALL LISTED AND TO BE ENDORSED."

78.     Ramelli Waste is listed as an "**ADDITIONAL INSURED**" in the ACORD "COMMERCIAL INSURANCE APPLICATION" submitted to Specialty Risk, binding agent for Hallmark.

79.     Binders of insurance issued on October 13, 2011 and November 2, 2011, respectively, both included blanket additional insured coverage.

80.     The 11/2/11 Binder was issued subsequent to the countersignature date of the Hallmark Policy.

81.     The "Sterling Actera" truck involved in the collision is a scheduled vehicle under the Hallmark Policy.

82.     In the Hallmark Policy's "Who Is An Insured" provision of the "LIABILITY COVERAGE" section, the Hallmark Policy states that "[a]nyone liable for the conduct of an 'insured'" qualifies as an "insured" under the Hallmark Policy.

83.     As a theory of liability, the Second Amended Complaint asserts that "[t]he Corporate Defendants [including Ramelli Waste] are liable for the negligent acts and/or omissions of Defendant Smith by virtue of the common law doctrine of vicarious liability including but not limited to the **doctrines of agency, employee/employer, control, actual authority, apparent authority, loaned servant, joint venture, joint enterprise, non-delegable duty, and denial of adequate legal remedy, and/or by virtue of contract and/or by virtue of state and federal statutory and regulatory law**."

84.     There is no prejudice to Hallmark in accepting the defense of and providing insurance coverage to Ramelli Waste.

85.     Hallmark has a duty to defend Ramelli Waste against the claims filed by the Buckles as demonstrated by the facts contained in this Complaint.

86.     As a result of Hallmark's failure and/or refusal to defend Ramelli Waste in the Hinds County Litigation, Ramelli Waste has been forced to retain counsel at its own expense, and is incurring attorneys' fees therein on a continuing basis.

87.     Ramelli Waste thus requests that the Court determine Hallmark has a duty to defend Ramelli Waste against the claims filed by the Buckles under the Hallmark Policy, and

to determine the scope and extent of Hallmark's obligations under the Hallmark Policy and Hallmark's rights and responsibilities as it relates to providing Ramelli Waste a defense to the Buckles' lawsuit as more fully described in the declarations set forth in the Prayer below.

### CAUSE 3:
### DECLARATORY JUDGMENT
### (DUTY TO INDEMNIFY)

88.     Ramelli Waste incorporates by reference herein each of the allegations contained in paragraphs 1 to 42 above.

89.     There is a real and actual controversy between Ramelli Waste and Hallmark as to Hallmark's duties under the Hallmark Policy related to the claims filed against Ramelli Waste arising out of the Accident.

90.     Ramelli Waste's "SUBCONTRACTOR AGREEMENT" with RKC required RKC to "**name … Ramelli Waste, LLC as additional insured**" on its insurance policies.

91.     The "ADDITIONAL INSURED" endorsement attached the Hallmark Policy under form "CA 99 01T" states that it extends "LIABILITY COVERAGE" to "ALL LISTED AND TO BE ENDORSED."

92.     Ramelli Waste is listed as an "**ADDITIONAL INSURED**" in the ACORD "COMMERCIAL INSURANCE APPLICATION" submitted to Specialty Risk.

93.     Binders of insurance issued on October 13, 2011 and November 2, 2011, respectively, both included blanket additional insured coverage.

94.     The 11/2/11 Binder was issued subsequent to the countersignature date of the Hallmark Policy.

95.     The "Sterling Actera" truck involved in the collision is a scheduled vehicle under the Hallmark Policy.

96.     In the Hallmark Policy's "Who Is An Insured" provision of the "LIABILITY COVERAGE" section, the Hallmark Policy states that "[a]nyone liable for the conduct of an 'insured'" qualifies as an "insured" under the Hallmark Policy.

97.     As a theory of liability, the Second Amended Complaint asserts that "[t]he Corporate Defendants [including Ramelli Waste] are liable for the negligent acts and/or omissions of Defendant Smith by virtue of the common law doctrine of vicarious liability including but not limited to the **doctrines of agency, employee/employer, control, actual authority, apparent authority, loaned servant, joint venture, joint enterprise, non-delegable duty, and denial of adequate legal remedy, and/or by virtue of contract and/or by virtue of state and federal statutory and regulatory law**."

98.     Hallmark has a duty to indemnify Ramelli Waste under the Hallmark Policy with respect to the claims filed by the Buckles as demonstrated by the facts contained in this Complaint.

99.     Ramelli Waste therefore requests that the Court determine Hallmark has a duty to indemnify Ramelli Waste under the Hallmark Policy, and to thus determine the scope and extent of Hallmark's obligations under the Hallmark Policy and Hallmark's rights and responsibilities as it relates to indemnifying Ramelli Waste of and from the Buckles' claims as more fully described in the declarations set forth in the Prayer below.

### CAUSE 4:
### BREACH OF CONTRACT

100.    Ramelli Waste incorporates by reference herein each of the allegations contained in paragraphs 1 to 42 above.

101.    Hallmark has a contractual obligation to provide a defense and indemnification to Ramelli Waste of and from the Buckles' claims. Hallmark has breached its contractual

obligations by failing and/or refusing to respond to Ramelli Waste's demands for defense and indemnity, resulting in a *de facto* denial of Ramelli Waste's claims. Hallmark's breach of its contractual obligations has caused Ramelli Waste damages, including attorneys' fees and costs, which are of a continuing nature and continue to be incurred as of the filing of this Complaint.

102.    Therefore, Ramelli Waste files this action for breach of contract against Hallmark, seeking damages against Hallmark including attorneys' fees and costs, which have been incurred and which are continuing to accrue as of the filing of this Complaint.

### CAUSE 5:
### BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

103.    Ramelli Waste incorporates by reference herein each of the allegations contained in paragraphs 1 to 42 above.

104.    Hallmark owes Ramelli Waste a duty of good faith and fair dealing in its claims handling procedures and in otherwise responding to Ramelli Waste's demands for defense and indemnity of and from the Buckles' claims.

105.    Hallmark has breached its duty of good faith and fair dealing by its complete failure to respond in an appropriate manner to Ramelli Waste's demands in the *over 200 days* since Hallmark was first placed on notice of Ramelli Waste's claim for defense and indemnity under the Hallmark Policy. Moreover, Hallmark has breached its duty of good faith and fair dealing in that it has settled multiple prior claims on behalf of Ramelli Waste in the past, yet without explanation has refused to provide a defense and insurance coverage in this matter.

106.    As a result of Hallmark's failure to respond to Ramelli Waste's demands related to the Buckles' claims, Ramelli Waste has been forced to hire counsel to defend itself against the Buckles' claims at its own expense. Hallmark's breach of its a duty of its duty of good faith and fair dealing has caused Ramelli Waste damages, including attorneys' fees and costs, which

are of a continuing nature and continue to be incurred as of the filing of this Complaint. Ramelli Waste may also face exposure for the Buckles' claims of at least $11,000,000 without any insurance coverage.

107.     Ramelli Waste therefore files this action for duty of good faith and fair dealing against Hallmark, seeking damages against Hallmark including attorneys' fees and costs, which have been incurred and which are continuing to accrue as of the filing of this Complaint.

### CAUSE 6:
### COMMON LAW BAD FAITH

108.     Ramelli Waste incorporates by reference herein each of the allegations contained in paragraphs 1 to 42 above.

109.     Under Texas common law, an insurance carrier must provide insurance coverage where the carrier knows or reasonably should know that a claim is covered under an insurance policy. Hallmark thus owed a duty to respond to and accept a claim by Ramelli Waste for defense and indemnity which it knew or reasonably should have known was covered under the Hallmark Policy.

110.     Hallmark has breached its common law obligations by its complete failure to respond in any appropriate manner to Ramelli Waste's demands in the _over 200 days_ since it was first placed on notice of Ramelli Waste's claim for defense and indemnity. Moreover, Hallmark has breached its common law obligations in that it has settled multiple prior claims on behalf of Ramelli Waste in the past, yet without explanation has refused to provide a defense and insurance coverage in this matter.

111.     As a result of Hallmark's failure to respond to Ramelli Waste's demands, Ramelli Waste has been forced to hire counsel to defend itself against the Buckles' claims at its own expense. Hallmark's breach of its common law obligations has caused Ramelli Waste

damages, including attorneys' fees and costs, which are of a continuing nature and continue to be incurred as of this date. Ramelli Waste may also face exposure for the Buckles' claims of at least $11,000,000 without any insurance coverage.

112.    Hallmark has been on notice of Ramelli Waste's claim for such a long period of time, and on so many separate occasions, that it can only be said that it has acted "knowingly" in its complete failure to respond to Ramelli Waste's demands for defense and indemnity under the Hallmark Policy, thus subjecting Hallmark to punitive damages.

113.    Therefore, Ramelli Waste files this action for common law bad faith against Hallmark, seeking damages against Hallmark including attorneys' fees and costs, which have been incurred and which are continuing to accrue as of the filing of this Complaint, as well as an award of punitive damages against Hallmark.

## VI.

### JACKSON/RAMELLI'S CAUSES OF ACTION ASSERTED AGAINST HALLMARK

#### CAUSE 1:
#### VIOLATIONS OF TEXAS INSURANCE CODE § 542

114.    Jackson/Ramelli incorporates by reference herein each of the allegations contained in paragraphs 1 to 53 above.

115.    Jackson/Ramelli is a "Claimant" as that term is defined in § 542 of the Code.

116.    Jackson/Ramelli's "SUBCONTRACTOR AGREEMENT" with RKC required RKC to "**name … Jackson/Ramelli, LLC as additional insured**" on its insurance policies.

117.    Binders of insurance issued on October 14, 2011 and November 2, 2011, respectively, both included blanket additional insured coverage.

118.    The 11/2/11 Binder was issued subsequent to the countersignature date of the

Hallmark Policy.

119.     In the Hallmark Policy's "Who Is An Insured" provision of the "LIABILITY COVERAGE" section, the Hallmark Policy states that "[a]nyone liable for the conduct of an 'insured'" qualifies as an "insured" under the Hallmark Policy.

120.     As a theory of liability, the Second Amended Complaint asserts that "[t]he Corporate Defendants [including Jackson/Ramelli] are liable for the negligent acts and/or omissions of Defendant Smith by virtue of the common law doctrine of vicarious liability including but not limited to the **doctrines of agency, employee/employer, control, actual authority, apparent authority, loaned servant, joint venture, joint enterprise, non-delegable duty, and denial of adequate legal remedy, and/or by virtue of contract and/or by virtue of state and federal statutory and regulatory law**."

121.     On or about January 6, 2015, Jackson/Ramelli provided a "Notice of claim" to Hallmark, seeking a defense and insurance coverage for the lawsuit filed against it by the Buckles.

122.     Under § 542, Hallmark had a duty to respond to Jackson/Ramelli's claim and to request a comprehensive list of items reasonably believed to be required from Jackson/Ramelli within fifteen (15) or thirty (30) days of receipt of the "notice of claim."

123.     Under § 542, Hallmark had a duty to provide **written acceptance or rejection** of Ramelli Waste's claim within fifteen (15) business days after receipt of "all items, statements, and forms required by the insurer to secure final proof of loss."

124.     As of the filing of this Complaint, Hallmark has failed to request "all items, statements, and forms that the insurer reasonably believes, at that time, will be required from the claimant." In fact, Hallmark has failed to provide any response to Jackson/Ramelli

whatsoever.

125.    Pursuant to § 542, Hallmark's failure to comply with the statutory claim handling deadlines and requirements renders it liable for actual damages incurred by Jackson/Ramelli, 18% interest on those damages, and attorneys' fees.

126.    Jackson/Ramelli's damages continue to be incurred on a daily basis; if any judgment is rendered against Jackson/Ramelli in the Hinds County Litigation, Jackson/Ramelli will incur additional damages in the amount of such judgment plus costs and attorneys' fees.

*CAUSE 2:*
*DECLARATORY JUDGMENT*
*(DUTY TO DEFEND)*

127.    Jackson/Ramelli incorporates by reference herein each of the allegations contained in paragraphs 1 to 42 above.

128.    There is a real and actual controversy between Jackson/Ramelli and Hallmark as to Hallmark's duties under the Hallmark Policy related to the claims filed against Ramelli Waste in the Hinds County Litigation.

129.    Jackson/Ramelli's "SUBCONTRACTOR AGREEMENT" with RKC required RKC to "**name … Jackson/Ramelli, LLC as additional insured**" on its insurance policies.

130.    Binders of insurance issued on October 13, 2011 and November 2, 2011, respectively, both included blanket additional insured coverage.

131.    The 11/2/11 Binder was issued subsequent to the countersignature date of the Hallmark Policy.

132.    In the Hallmark Policy's "Who Is An Insured" provision of the "LIABILITY COVERAGE" section, the Hallmark Policy states that "[a]nyone liable for the conduct of an 'insured'" qualifies as an "insured" under the Hallmark Policy.

133.    As a theory of liability, the Second Amended Complaint asserts that "[t]he Corporate Defendants [including Jackson/Ramelli] are liable for the negligent acts and/or omissions of Defendant Smith by virtue of the common law doctrine of vicarious liability including but not limited to the **doctrines of agency, employee/employer, control, actual authority, apparent authority, loaned servant, joint venture, joint enterprise, non-delegable duty, and denial of adequate legal remedy, and/or by virtue of contract and/or by virtue of state and federal statutory and regulatory law**."

134.    There is no prejudice to Hallmark in accepting the defense of and providing insurance coverage to Jackson/Ramelli.

135.    Hallmark has a duty to defend Jackson/Ramelli against the claims filed by the Buckles as demonstrated by the facts contained in this Complaint.

136.    As a result of Hallmark's failure and/or refusal to defend Jackson/Ramelli in the Hinds County Litigation, Jackson/Ramelli has been forced to retain counsel at its own expense, and is incurring attorneys' fees therein on a continuing basis.

137.    Jackson/Ramelli therefore requests that the Court determine that Hallmark has a duty to defend Jackson/Ramelli against the claims filed by the Buckles, and to thus determine the scope and extent of Hallmark's obligations under the Hallmark Policy and Hallmark's rights and responsibilities as it relates to providing Jackson/Ramelli a defense to the Buckles' lawsuit as more fully described in the declarations set forth in the Prayer below.

*CAUSE 3:*
*DECLARATORY JUDGMENT*
*(INSURANCE COVERAGE)*

138.    Jackson/Ramelli incorporates by reference herein each of the allegations contained in paragraphs 1 to 42 above.

139.    There is a real and actual controversy between Jackson/Ramelli and Hallmark as to Hallmark's duties under the Hallmark Policy related to the claims filed against Ramelli Waste arising out of the Accident.

140.    Jackson/Ramelli's "SUBCONTRACTOR AGREEMENT" with RKC required RKC to "**name … Jackson/Ramelli, LLC as additional insured**" on its insurance policies.

141.    Binders of insurance issued on October 13, 2011 and November 2, 2011, respectively, both included blanket additional insured coverage.

142.    The 11/2/11 Binder was issued subsequent to the countersignature date of the Hallmark Policy.

143.    In the Hallmark Policy's "Who Is An Insured" provision of the "LIABILITY COVERAGE" section, the Hallmark Policy states that "[a]nyone liable for the conduct of an 'insured'" qualifies as an "insured" under the Hallmark Policy.

144.    As a theory of liability, the Second Amended Complaint asserts that "[t]he Corporate Defendants [including Jackson/Ramelli] are liable for the negligent acts and/or omissions of Defendant Smith by virtue of the common law doctrine of vicarious liability including but not limited to the **doctrines of agency, employee/employer, control, actual authority, apparent authority, loaned servant, joint venture, joint enterprise, non-delegable duty, and denial of adequate legal remedy, and/or by virtue of contract and/or by virtue of state and federal statutory and regulatory law**."

145.    Hallmark has a duty to provide insurance coverage to Jackson/Ramelli with respect to the claims filed by the Buckles as demonstrated by the facts contained in this Complaint.

146.    Jackson/Ramelli therefore requests that the Court determine that Hallmark has a

duty to indemnify Jackson/Ramelli against the claims filed by the Buckles, and to thus determine the scope and extent of Hallmark's obligations under the Hallmark Policy and Hallmark's rights and responsibilities as it relates to indemnifying Jackson/Ramelli from the Buckles' claims as more fully described in the declarations set forth in the Prayer below.

## VII.

## ATTORNEYS' FEES

147.    Ramelli Waste and Jackson/Ramelli seek to recover attorneys' fees under TEX. INS. CODE, Title 5, Subtitle C, § 542 et seq., and other applicable law and authority.

## VIII.

## JURY DEMAND

148.    Ramelli Waste and Jackson/Ramelli respectfully demand a trial by jury.

## IX.

## PRAYER FOR RELIEF
## (RAMELLI WASTE, LLC)

WHEREFORE, PREMISES CONSIDERED, Ramelli Waste prays that this Court:

1.    Grant judgment against Hallmark for violations of TEX. INS. CODE, Title 5, Subtitle C, § 542 et. seq., including:

   a.    Actual damages;
   b.    Costs;
   c.    Attorneys' fees; and
   d.    Interest in the amount of 18% per annum.

2.    Declare that Hallmark has a duty to defend Ramelli Waste against the Buckles' claims filed in the Hinds County Litigation, and to reimburse Ramelli Waste for its defense costs incurred to date;

3.    Declare that Hallmark has a duty to indemnify Ramelli Waste of and from the Buckles' claims, for which Ramelli Waste faces liability of at least $11,000,000;

4.      Grant judgment against Hallmark for breach of contract, awarding damages including costs and attorneys' fees;

5.      Grant judgment against Hallmark for breach of the duty of good faith and fair dealing, awarding damages including costs and attorneys' fees;

6.      Grant judgment against Hallmark for common law bad faith, awarding damages including costs, attorneys' fees, and punitive damages against Hallmark in an amount not less than $1,000,000;

7.      Grant Ramelli Waste such other relief as this Court deems just and proper.

## X.

## PRAYER FOR RELIEF
## (JACKSON/RAMELLI, LLC)

WHEREFORE, PREMISES CONSIDERED, Jackson/Ramelli prays that this Court:

1.      Grant judgment against Hallmark for violations of TEX. INS. CODE, Title 5, Subtitle C, § 542 et. seq., including:

    a.      Actual damages;
    b.      Costs;
    c.      Attorneys' fees; and
    d.      Interest in the amount of 18% per annum.

2.      Declare that Hallmark has a duty to defend Jackson/Ramelli against the Buckles' claims filed in the Hinds County Litigation, and to reimburse Jackson/Ramelli for its defense costs incurred to date;

3.      Declare that Hallmark has a duty to indemnify Jackson/Ramelli of and from the Buckles' claims, for which Jackson/Ramelli faces liability of at least $11,000,000.

4.      Grant Jackson/Ramelli such other relief as this Court deems just and proper.

Respectfully submitted,

Gene A. Hamm II
State Bar No. 00795405
John P. Martin
State Bar No. 24074657

**THE HAMM FIRM**
1333 W. McDermott, Suite 200
Allen, Texas  75013
Main:  (469) 656-1593
eFax:   (469) 656-1594

ATTORNEYS FOR RAMELLI WASTE, LLC
AND JACKSON/RAMELLI, LLC